UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA,

- against -

BRANDON GREEN,

Defendant.

----------------------------------------X

```
USDC S.....
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12|1|06
```

04 Cr. 424-14 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

On May 5, 2005, Defendant Brandon Green ("Green") pled guilty to conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. For the reasons set forth below, Green will be sentenced to 84 months' imprisonment and a six-year term of supervised release. A special assessment of $100 is mandatory and is due immediately.

**Prior Proceedings**

On May 6, 2004, the government filed a sealed indictment against Green and his co-defendants, charging them with a single count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Green was issued the same day. Green was arrested on June 2, 2004, and has

1

remained in custody without bail since that time.  On May 5, 2005, Green appeared before the Court and pled guilty to conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846, but made no admission as to the amount of drugs involved.  Green is scheduled to be sentenced on December 4, 2006.

## The Sentencing Framework

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission (the "Sentencing Commission").  Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed --

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

2

> > (C)   to protect the public from further crimes of
> >       the defendant; and
> >
> > (D)   to provide the defendant with needed
> >       educational or vocational training, medical
> >       care, or other correctional treatment in the
> >       most effective manner;
>
> (3)   the kinds of sentences available;
>
> (4)   the kinds of sentence and the sentencing range
>       established for --
>
> > (A)   the applicable category of offense committed
> >       by the applicable category of defendant as set
> >       forth in the guidelines ...;
>
> (5)   any pertinent policy statement ... [issued by the
>       Sentencing Commission];
>
> (6)   the need to avoid unwarranted sentence disparities
>       among defendants with similar records who have been
>       found guilty of similar conduct; and
>
> (7)   the need to provide restitution to any victims of
>       the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

Green was born on February 26, 1983, in the Bronx, New York. Green was raised mainly by his mother, a home attendant, and does not have a close relationship with his father, who did not live in the home.

Green began using drugs at an early age. He reports that he used marijuana on a daily basis from the age of twelve, used cocaine from the age of sixteen, and also has used ecstasy. Green also became involved in dealing drugs himself. Shortly before his arrest for the instant offense, Green attended but did not complete a court-mandated drug treatment program.

At the age of fifteen, Green was referred by his school to a psychiatrist who wanted to prescribe Ritalin or Thorazine for his hyperactivity. Green's mother refused the medication, but Green did receive some counseling. Shortly thereafter, Green was adjudicated a juvenile delinquent and was placed in a juvenile facility in Rochester, New York. Green has not completed his high school education.

Green reportedly has worked loading trucks and as a file clerk, but reports no assets.

The defendant is single and has no children.

Green was adjudicated a juvenile delinquent and placed in a juvenile facility on June 19, 1999, after being charged with criminal sale of a controlled substance in the fifth degree. Green also has two adult criminal convictions based on his conduct as a seventeen-year-old. On October 10, 2000, Green pled guilty to robbery in the second degree. Green pled guilty to criminal sale

4

of a controlled substance in the third degree on February 6, 2001. On December 6, 2001, Green was sentenced to five years' probation on the robbery conviction, and one year imprisonment on the drug conviction. On July 25, 2003, Green was resentenced to one year imprisonment on the robbery conviction after violating his probation.

## The Offense Conduct

The indictment filed in this action charges that from at least 1999 through May 2004, Green, along with his nineteen co-defendants and others, was a member of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions. The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

Green was a "worker" or "pitcher" for the Organization. Workers or pitchers for the Organization would be provided heroin on consignment by managers in the Organization, and would then sell the heroin to customers, paying the managers for the heroin as they were able to sell it. Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or

5

to managers to complete sales of heroin. According to the indictment, eleven of Green's co-defendants also acted as workers or pitchers.

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half a kilogram per month, although the actual amount could vary from month to month.[1]  Green

---

[1]  Although the government asserts that the Organization sold "as much as fifty bundles of heroin a day," which is the equivalent of 500 glassines of heroin a day, the Court finds an average daily distribution of twenty-five bundles.  The trial testimony of one cooperating witness, who is a former member of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] ever remember selling in one day."  (Green Trial Tr. at 137) (emphasis added).  That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred."  (Green Trial Tr. at 137.)

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles."  (Green Trial Tr. at 387.)  On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles."  (Green Trial Tr. at 388.)  However, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be boasting about how much drugs they sold that day."  (Green Trial Tr. at 388) (emphasis added).

The Organization operated in three shifts, with two people -- a manager and a pitcher -- working each shift.  The pitcher conducted most of the sales, while the manager may have sold if the opportunity arose.  (Green Trial Tr. at 135.)  The Court considered both the structure of the Organization and the testimony presented regarding sales when determining the average daily distribution of heroin to attribute to the conspiracy.

6

has admitted to acting as a steerer on January 22, 2003.  He also was arrested on June 3, 2003, after selling two glassines of heroin to an undercover officer.  The Court finds that Green should be held accountable for conspiring to distribute between three and ten kilograms of heroin during his involvement with the conspiracy between January 22, 2003 and June 2, 2004, when he was most recently arrested.

**The Relevant Statutory Provisions**

Green contends that because the Government did not charge a specific drug quantity as an element of his indictment, and because he did not plead guilty to a specific drug quantity, he cannot be sentenced under 21 U.S.C. § 841(b)(1)(A).  As the Second Circuit recently held:

> [D]rug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support conviction or sentence on an aggravated offense under § 841(b)(1)(A) or (b)(1)(B).  If a defendant is convicted only on a lesser unquantified drug charge, he must be sentenced pursuant to § 841(b)(1)(C), which generally provides no mandatory minimum sentence. In sum, while the district court in its discretion could have sentenced [defendant] to a twenty-year term of incarceration pursuant to § 841(b)(1)(C), unless a jury found or [defendant] admitted the charged statutory drug quantity, the court was not required to sentence him to that term pursuant to § 841(b)(1)(A), nor was its departure discretion curbed by that mandatory minimum.

United States v. Gonzalez, 420 F.3d 111, 131 (2d Cir. 2005).  Green did not admit to responsibility for one kilogram or more of heroin

7

during his allocution, nor has the government proven to a jury
beyond a reasonable doubt that one kilogram or more of heroin
should be attributed to Green.  Thus, under <u>Gonzalez</u>, no statutory
minimum mandatory sentence applies, and Green must be sentenced
under § 841(b)(1)(C).

Because Green has a prior conviction for a felony drug
offense, the statutory maximum term of imprisonment is thirty
years, pursuant to 21 U.S.C. § 841(b)(1)(C). If a term of
imprisonment is imposed, the Court shall impose a subsequent term
of supervised release of at least six years pursuant to 21 U.S.C.
§ 841(b)(1)(C).

Green is eligible for not less than one nor more than
five years' probation by statute, pursuant to 18 U.S.C. §
3561(c)(1).

The statutory maximum fine is $2 million, pursuant to 21
U.S.C. § 841(b)(1)(C).  A special assessment of $100 is mandatory.
18 U.S.C. § 3013.

Green may be declared ineligible for any or all Federal
benefits for up to ten years as determined by the Court pursuant to
21 U.S.C. § 862(a)(1)(B).

8

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole, or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole, or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

**The Guidelines**

The November 1, 2006 edition of the United States Sentencing Commission Guidelines Manual ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11.

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846 is found in U.S.S.G. § 2D1.1. The Court has determined that Green is responsible for distributing between three and ten kilograms of heroin. Pursuant to the Drug Quantity Table, the base offense level is 34. U.S.S.G. § 2D1.1(c)(3).

Based on Green's plea allocution, he has shown recognition of responsibility for the offense. Based on his timely notification of his intention to plead guilty and because the base

9

offense level is greater than 16, the offense level is reduced by three levels pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b). The resulting adjusted offense level is 31.

Green receives two criminal history points for his adjudication and sentence as a juvenile delinquent, and two criminal history points for each of his adult criminal convictions. U.S.S.G. §§ 4A1.2(d)(2)(A). At the time the instant offense was committed, the defendant was on probation for his robbery conviction. Therefore, two points are added, pursuant to § 4A1.1(d). Because the instant offense was committed less than two years after Green's release from custody on his prior drug conviction, one more point is added, pursuant to § 4A1.1(e). The total of the criminal history points is nine, which establishes a Criminal History Category of IV.

However, under the Guidelines,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). As Green was more than eighteen years of age at the time of the instant controlled substance offense, and has one prior conviction for a crime of violence and one prior controlled-substance conviction not arising out of the instant

10

offense conduct, he is a career offender pursuant to U.S.S.G. § 4B1.1(a).

Green's offense level is not affected by his career offender designation, but the Guidelines provide that "[a] career offender's criminal history category in every case under this subsection shall be Category VI." U.S.S.G. § 4B1.1(b). Accordingly, Green's Criminal History Category is elevated to VI.

Green has requested a downward departure within the Guidelines based upon the conditions of his pre-sentence detention. The Second Circuit has held that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." United States v. Carty, 264 F.3d 191, 196 (2d Cir. 2001) (per curiam). As several courts in this district have noted, however, "a departure on this basis lies only `where the conditions in question are extreme to an exceptional degree and their severity falls upon the defendant in some highly unique or disproportionate manner.'" United States v. Teyer, 322 F. Supp. 2d 359 (S.D.N.Y. 2004) (quoting United States v. Mateo, 299 F. Supp. 2d 201, 208 (S.D.N.Y. 2004)). Because Green has not alleged that the conditions of his detention differed in any way from the conditions experienced by other pre-sentence detainees at that facility, a downward departure is not appropriate on this basis.

11

Based on an offense level of 31 and a Criminal History Category of VI, the Guidelines range for imprisonment is 188 to 235 months.

The authorized term for supervised release under the guidelines is six years, pursuant to U.S.S.G. § 5D1.2(c). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to U.S.S.G. § 5D1.1(b).

Green is not eligible for probation because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5C1.1(f).

The fine range for the instant offense under the guidelines is from $15,000 to $2 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and (c)(4). Subject to Green's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,952.66 to be used for imprisonment, a monthly cost of $287.50 for supervision, and a monthly cost of $1,736.98 for community confinement.

12

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In particular, section 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B). In addition, section 3553(a)(6) highlights "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Green has argued that he should receive a non-Guidelines sentence of twenty-seven to thirty-three months instead of a

13

sentence within the Guidelines range. First, Green has contended that the convictions relied upon in concluding that he is a career offender pursuant to U.S.S.G. § 4B1.1(a) are remote and are given too much weight in the criminal history calculation, thus over-representing the seriousness of his prior criminal history. Second, the defendant has argued that a non-Guidelines sentence is appropriate in order to avoid unwarranted sentencing disparities in accordance with 18 U.S.C. § 3553(a)(6). Although the Court concludes that the Guidelines range based on Green's career offender designation is greater than necessary to achieve the purposes of sentencing, considerations of deterrence and the need to avoid unwarranted disparities in sentencing compel the imposition of a more substantial sentence than Green has suggested.

Like most of his co-defendants, Green grew up amid challenging personal circumstances. He had little contact with his father, and received minimal supervision from his mother, who struggled to raise two children by herself while working for low wages. Despite his youth, Green is a longtime drug addict, and two of his three criminal convictions stem from drug-related activity. Green did not complete high school, reports minimal employment history, and has few marketable skills with which to sustain employment. As a drug addict with limited job opportunities, it is perhaps unsurprising that Green supported himself by selling drugs.

14

Although all of Green's prior convictions were based on his conduct while still a minor, it cannot be said that they are so remote as to warrant the imposition of a non-Guidelines sentence on that ground. As noted above, the instant offense was committed less than a year and a half after his release from incarceration for a prior drug conviction, and while he was still on probation for his robbery conviction. However, the Court takes note of the sentences imposed for Green's prior convictions in determining whether the Guidelines sentence indicated by his career criminal status is excessive. See Mishoe, 241 F.3d at 220; United States v. Hernandez, No. 04 Cr. 424-20 (RWS), 2005 WL 1423276, at *9 (S.D.N.Y. June 13, 2005). As the Second Circuit noted in Mishoe,

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect. . . . In some circumstances, a large disparity in that relationship might indicate that the [Guidelines] sentence provides a deterrent effect . . . in excess of what is required in light of the prior sentences and especially the time served on those sentences . . . .

241 F.3d at 220 (discussing downward departure from Guidelines sentence resulting from defendant's career criminal designation).

15

As Green has never been incarcerated for a term of more than a year, a term of imprisonment significantly greater than those previously imposed will achieve the deterrent effect underlying the career offender designation.

Finally, in considering the remaining sentencing factors under 18 U.S.C. § 3553(a), the Court must take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Since Booker, a growing number of courts have "held that sentencing judges are `no longer prohibited from considering the disparity between co-defendants in fashioning a reasonable sentence.'" Ferrara v. United States, 372 F. Supp. 2d 108 (D. Mass. 2005) (quoting United States v. Hensley, No. 2:04 CR 10081, 2005 WL 705241, at *2 (W.D. Va. Mar. 29, 2005)); see also United States v. McGee, 408 F.3d 966 (7th Cir. 2005); Simon v. U.S., 361 F. Supp. 2d 35, 49 (E.D.N.Y. 2005).

Like many of his co-defendants, Green was a pitcher, on the lowest level of the Daly Avenue Organization, and has been found responsible for the distribution of three to ten kilograms of heroin during his involvement with the conspiracy. Green has a number of similarly situated co-defendants. Bernard Wheeler ("Wheeler"), Candido Serrano ("Serrano"), and Alexis Hernandez ("Hernandez") all were pitchers for extended periods of time, and

16

all were designated career offenders pursuant to U.S.S.G. §
4B1.1. All three received the mandatory minimum sentence of 120
months' imprisonment. See Hernandez, 2005 WL 1423276, at *10;
United States v. Serrano, No. 04 Cr. 424-19 (RWS), 2005 WL
1214314, at *9 (S.D.N.Y. May 19, 2005); United States v. Wheeler,
No. 04 Cr. 424-15 (RWS), 2004 WL 2646625, at *7 (S.D.N.Y. Nov.
18, 2004). Unlike these co-defendants, however, Green is not
subject to the mandatory minimum.

The Court also takes note of the sentences imposed for
Green's co-defendants Samuel Asiedu ("Asiedu"), Brian Brock
("Brock"), and Robert Melendez ("Melendez"). Like Wheeler,
Serrano, and Hernandez, and also like Green, all these defendants
were pitchers for the Daly Avenue Organization and all were found
responsible for the distribution of three to ten kilograms of
heroin. However, Asiedu, Brock, and Melendez were eligible for
safety-valve relief from the mandatory minimum sentence because
of their limited criminal histories. In light of the sentencing
factors set forth at 18 U.S.C. § 3553(a), each was sentenced to a
sixty-month term of imprisonment. See United States v. Asiedu,
No. 04 Cr. 424-12 (RWS), 2005 WL 1423261, at *6 (S.D.N.Y. June
15, 2005); United States v. Brock, No. 04 Cr. 424-07 (RWS), 2005
WL 1423265, at *7 (S.D.N.Y. June 15, 2005); United States v.
Melendez, No. 04 Cr. 424-03 (RWS), 2005 WL 1423261, at *9
(S.D.N.Y. June 15, 2005). Although the Court has found that
Asiedu, Brock, Melendez, and Green were responsible for the

17

distribution of roughly equal quantities of heroin, a longer sentence of imprisonment is appropriate for Green to reflect the difference in the defendants' criminal histories and achieve the requisite deterrent effect. Asiedu, Brock, and Melendez all fell within Criminal History Category I. Were it not for the career offender designation, Green would fall within Criminal History Category IV. Based upon this difference, the Guidelines suggest that Green should be sentenced to a term of imprisonment approximately two years greater than those imposed for Asiedu, Brock, and Melendez.[2]

Green contends that his involvement in the Organization more closely resembles that of co-defendant Ruben Ramos, who was sentenced to time served. See United States v. Ramos, No. 04 Cr. 424-10 (RWS), 2006 WL 1627885, at *6 (S.D.N.Y. June 12, 2006). The Court found that Ramos "should be held accountable for conspiring to distribute from ten to twenty grams of heroin during his one-day involvement with the conspiracy on March 9, 2004." Id. at *3. Green argues that he also only participated in the conspiracy for a single day, but this contention is belied by Green's admission of conduct furthering the conspiracy on January 22, 2003 (Def.'s Sentencing Mem. at 5) and June 2, 2004 (Def.'s Sentencing Mem. at 8), as well as his arrest for selling

---

[2]     Compare the Guidelines range of 57-71 months for a defendant with an offense level of 25 and a Criminal History Category of I with the Guidelines range of 84-105 months for a defendant with the same offense level but a Criminal History Category of IV.

18

heroin on June 3, 2003. As noted above, the Court has found that Green is responsible for conspiring to distribute between three and ten kilograms of heroin between January 2003 and June 2004. The length of Green's involvement in the conspiracy makes a comparison with Ramos untenable, and supports a comparison with co-defendants Asiedu, Brock, Melendez, Hernandez, Serrano, and Wheeler, as discussed above.

In light of all the factors set forth at 18 U.S.C. § 3553(a), it is determined that a non-Guidelines sentence is warranted.

## The Sentence

For the instant offense, Green will be sentenced to 84 months' imprisonment, to be followed by a six-year term of supervised release. As Green has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

A special assessment fee of $100, payable to the United States, is mandatory and due immediately. Because Green lacks financial resources, and in consideration of the other factors listed in 18 U.S.C. § 3572, no fine is imposed.

19

Green shall report to the nearest Probation Office within seventy-two hours of release from custody. It is recommended that he be supervised by the district of residence.

As mandatory conditions of supervised release, Green shall (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1)  Green will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse provider, as approved by the Probation Officer. Green will be required to contribute to the costs of services rendered, in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2)  Green also will submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that

20

the premises may be subject to search pursuant to
this condition.

This sentence is subject to modification at the
sentencing hearing scheduled for December 4, 2006.

It is so ordered.

**New York, NY**
**December**     , **2006**

ROBERT W. SWEET
U.S.D.J.

21